**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA SYPOLT, | ) CASE NO.   4:16-cv-01410 |
|  | ) |
| Plaintiff, | ) JUDGE SARA LIOI |
|  | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
|  | ) |
| NANCY A. BERRYHILL, | ) |
| *Acting Comm'r of Social Security*, | ) **REPORT AND RECOMMENDATION** |
|  | ) |
| Defendant. | ) |

Plaintiff Cynthia Sypolt (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act").   This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).   This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.   For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for further proceedings consistent with this opinion.

## I. Procedural History

On November 29, 2012, Plaintiff filed an application for SSI, alleging a disability onset date of November 1, 2011.[1] (Transcript ("Tr.") 154-159). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. (Tr. 111-123). Plaintiff participated in the hearing, was represented by counsel, and testified. (Tr. 65-90). A vocational expert ("VE") also participated and testified. (*Id*.) On January 8, 2015, the ALJ found Plaintiff not disabled. (Tr. 59). On April 6, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On June 9, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 15 & 20).

Plaintiff asserts the following assignments of error: (1) the finding that Plaintiff can perform a reduced range of light work is not supported by substantial evidence; and (2) the ALJ erred in finding Plaintiff's testimony was not credible. (R. 15).

## II. Evidence

### A. Relevant Evidence[2]

#### 1. Disability Application

In her disability application, Plaintiff indicated that she suffered from shortness of breath, pain, excessive perspiration, and dizziness. (Tr. 195). She indicated that she experienced pain in her lungs and back. *Id*. She did not mention leg pain or weakness. *Id*.

---

[1] According to the decision, Plaintiff alleged an onset date of August 4, 2012. (Tr. 50).

[2] The recitation of the evidence is not intended to be exhaustive. Plaintiff contends that this case "turns on whether or not Plaintiff can endure standing or walking for greater than (4) hours in a work day, and [Plaintiff's] testimony and statements regarding her back pain and leg weakness and pain…" (R. 15, PageID# 811). As such, the Court includes only those portions of the record relevant to this issue.

**2. Treatment Records**

In a treatment note from Alliance Community Hospital dated August 23, 2013, Plaintiff claimed that she could sit about one hour before having to get up, that her pain woke her up at night, and that her pain was aggravated by standing for too long, walking too far, sitting for too long, and even by trying to sleep. (Tr. 456-458). She reported walking on her treadmill every other day for at least ten minutes. (Tr. 457). She also indicated that her activities of daily living ("ADL") were accomplished with pain. (Tr. 458).

On September 17, 2013, physical therapy notes indicate that Plaintiff progressed towards her goals, and Plaintiff felt her pain levels had decreased to a manageable level. (Tr. 460). Objectively, both her left and right lower extremities all revealed good extension/flexion on manual muscle testing. (Tr. 462). Nonetheless, she remained concerned as to "why her legs feel like they could give out." (Tr. 460, 467). She reported being extra sore due to slipping on wet grass the other day. (Tr. 467). Her long-term goals were the ability to pick-up her grandchildren without any increase in back pain, to be able to stand and wash dishes for more than 15 minutes with no increase in back pain, and to walk on the treadmill every other day with no increase in back pain. (Tr. 475).

On November 14, 2013, a magnetic resonance image ("MRI") of Plaintiff's lower lumbar spine revealed only mild degenerative changes; there was no spondylolysis or spondylolisthesis and no paraspinal masses. (Tr. 543).

On November 20, 2013, Plaintiff was seen by Pamela A. Rodocoy. (Tr. 488-489). On physical examination, Dr. Rodocoy noted that Plaintiff was in no appreciable distress, ambulated normally, had normal musculoskeletal strength and tone, had no edema, and normal gait and station. (Tr. 488). The "Assessment/Plan" included disorder of the back with a notation of "no

3

significant DDD [degenerative disc disease]" and weakness of limb. *Id*.

On January 29, 2014, an EMG of Plaintiff's legs yielded normal results with no evidence of peripheral polyneuropathy, bilateral lumbosacral radiculopathy or myopathy. (Tr. 520).

On February 7, 2014, Plaintiff was again seen by Dr. Rodocoy, and again complained of bilateral leg weakness, COPD, and disorder of the back. (Tr. 523-524).

On March 19, 2014, Plaintiff was seen by Ali Shakir, M.D. (Tr. 501-505). Plaintiff complained of lower back and leg pain starting one-year earlier. (Tr. 501). Plaintiff alleged her pain was constant, and described the pain as aching, stabbing, burning, and throbbing; she rated her pain as ten out of ten. *Id*. She reported that her pain has been so intense that it significantly impacted her activities of daily living. *Id*. Her pain was worse at night, but was improved with walking, standing, medication , and changes in position. *Id*. Over the counter pain medications provided no benefit; a recent prescription of Gabentin helped, but relief was not sustained. *Id*. On physical examination, Plaintiff had a normal gait and was able to transition without assistance. (Tr. 503). Inspection of the lumbar spine revealed normal lumbar lordosis, marked tenderness over bilateral sacroiliac joints, and restricted range of motion ("ROM") of the lumbar spine in all planes. *Id*. Lumbar ROM demonstrated moderate reduction in flexion and extension and mild reduction in side-bending. (Tr. 503-504).

On March 25, 2014 and April 17, 2014, Plaintiff reported that she has significant leg weakness when her pain is significant, but that she had not fallen. (Tr. 497, 600). Throughout 2014, treatment notes variably describe Plaintiff as walking with an antalgic gait, while other times with a normal gait. (Tr. 498, 582, 585, 597, 624, 672).

On May 7, 2014, Plaintiff told Dr. Shakir that steroid injections administered on April 16, 2014, had provided 50 percent pain reduction for about three weeks, but that her pain gradually

4

returned thereafter. (Tr. 690).

On August 15, 2014, Plaintiff told Dr. Shakir that steroid injections administered on May 22, 2014, had provided 90 percent pain reduction for about two weeks, but that her pain gradually returned thereafter. (Tr. 623).

On September 11, 2014, Gamal El-Mobasher, M.D., noted 3+ pitting edema and varicose veins in Plaintiff's legs. (Tr. 653-654). Her weight was recorded as 193 lbs. with a Body Mass Index ("BMI") of 30.22. *Id*.

On October 9, 2014, Dr. El-Mobasher noted that Plaintiff's pain management specialist would no longer prescribe any pain medication, and he declined to prescribe Plaintiff any Schedule Two pain medications. (Tr. 651).

On October 14, 2014, Plaintiff told Dr. Shakir that steroid injections administered on October 8, 2014, had provided a good benefit until she fell on her back. (Tr. 671). She reported that the pain is made worse by running the sweeper or by sitting for more than 45 minutes. *Id*. Pain is lessened by walking or changing positions. *Id*.

3. **Medical Opinions Concerning Plaintiff's Functional Limitations**

On February 15, 2013, State Agency physician Gary Hinzman, M.D., reviewed Plaintiff's records and noted diagnoses of COPD and essential hypertension. (Tr. 94-97). Notably, back or leg pain were not included among the diagnoses. (Tr. 94). Dr. Hinzman indicated that Plaintiff's medically determinable impairments could reasonably be expected to produce pain or other symptoms, but that the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. (Tr. 95). Dr. Hinzman noted that "[t]he claimant states she has shortness of breath, pain, dizziness and sweats a lot. This is consistent with the evidence and her symptoms are considered fully credible." *Id*. Dr. Hinzman

5

opined that Plaintiff retained the capacity for medium exertional work, including the ability to stand/walk and sit for six hours each in an 8-hour workday. *Id*.  He did note that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 96).

On May 9, 2013, State Agency physician Louis Goorey, M.D., affirmed Dr. Hinzman's findings and RFC assessment. (Tr. 109-107).

### 4. Hearing Testimony

At her October 17, 2014 hearing, the Plaintiff testified as follows:

- She is right-handed, and experiences tremors "all the time" stemming from carpal tunnel syndrome. (Tr. 69-70).  She uses two hands to hold objects because she has difficulty picking up objects with only her right hand. (Tr. 79).  She has difficulty with buttons, and her sister-in-law helps her button her pants and tie her shoe laces. (Tr. 79-80).

- She does not drive often and avoids doing so due to difficulty sitting. (Tr. 70).  She does not have a handicapped placard. (Tr. 71).

- She cannot work because "[f]rom my back down to my legs they go numb on me.  I can only stand and lay for so long, then I have to get up because they hurt clear into the bone." (Tr. 71).  Her doctors have not talked to her about surgery, because she was still receiving injections in her back.  She had received three total. (Tr. 71-72, 75).  The injections typically wear off in a month, but even before the ameliorating effects wear off she still has to watch what she does. (Tr. 72).

- Her back and legs will start to go numb when doing dishes. *Id*.  When her legs go numb, she needs to sit for five minutes. (Tr. 78).

- On a typical day, she has a cup of coffee after waking up, takes her medications because "that's what wakes me up is my legs and that.  And I'll sit for so long, like maybe 20 minutes or something like that, and then I have to get up and walk around.  And then if I sit for so long, my legs go numb on me." (Tr. 73-74).  She tries to help her sister-in-law with household chores, such as dusting. *Id*.

- Other than injections, she was taking Gabentin four times daily, and Zanaflex (which replaced Flexeril). (Tr. 74).

- She goes grocery shopping, but needs to hold onto a cart. (Tr. 74).  She usually has someone else finish the shopping for her while she waits in the car. (Tr. 75).

6

- She was also using a ProAir inhaler for her breathing problems, and her breathing is negatively affected by humidity. (Tr. 75-76). Her related symptoms include headaches, and difficulty getting enough air. (Tr. 76). These problems occur "all the time," and are not triggered by any specific activity. *Id*. She uses her inhaler approximately five times per day. (Tr. 77).

- She walks a little, but can walk no more than 20 minutes before either her back pain or breathing issues cause her to stop. (Tr. 76). During the course of a day, she tries to "do a lot," but her breathing problems interfere. As such, she has to do a little at a time. After 15 minutes of activity, she often needs to stop and rest for 10 to 20 minutes until her inhaler takes effect. (Tr. 77).

- She has undergone one MRI. (Tr. 78).

- She used to smoke, but stopped three years earlier. (Tr. 78-79).

- Recently, she would simply shower and put her pajamas back on, and not get dressed for the day unless she had a doctor's appointment. (Tr. 80).

The ALJ posed the following hypothetical question to the VE:

> So for each hypothetical that I give you, please assume we have an individual of the claimant's age and education with no past relevant work. And further assume this individual is limited as follows …. So, an individual who could occasionally lift and/or carry, including upward pulling, 20 pounds. Can frequently lift and/or carry, including upward pulling, ten pounds. The individual could stand and/or walk with normal breaks for about six hours in an eight-hour workday. And sit with normal breaks for about six hours in an eight-hour workday. Pushing and pulling are limited only to the extent that lifting and carrying are limited. The individual could occasionally climb ramps and stairs. Occasionally stoop, kneel, crouch, crawl and no limits in balancing. The individual could never climb ladders, ropes and scaffolds. The individual should avoid concentrated exposure to fumes, odors, dust, gasses, poor ventilation, et cetera.

(Tr. 84).

The VE testified that such an individual could perform the following jobs: routing clerk, Dictionary of Occupational Titles ("DICOT") 222.687-022, SVP 2, light exertional (600,000 jobs nationally, 30,000 in Ohio, and 11,000 locally); mail clerk, DICOT 209.687-026, SVP 2, light exertional (80,000 jobs nationally, 3,300 in Ohio, 1,100 locally); and, merchandise marker,

7

DICOT 209.587-034, SVP 2, light exertional (1.2 million jobs nationally, 50,000 in Ohio, 17,000 locally). (Tr. 85).

The ALJ proceeded to note that because the claimant was age 50 at all times, she did not need to ask about sedentary work because "with no past relevant work, that would be a grid situation." (Tr. 85). The ALJ then posed a second hypothetical, reducing the hypothetical individual to standing and/or walking to only four hours. *Id*. The VE testified that, based on her experience, such a limitation would effectively constitute sedentary work. *Id*.

In a third hypothetical, the ALJ asked: "if I have an individual who—this changing positions [sic]. If they needed to change positions, but were able to stay on task, that is they just needed to shift position from a sitting or a standing, but they could still stay on task, would there still be light jobs that that individual could do, be able to do?" (Tr. 85-86). After clarifying that six out of eight hours would be performed standing, the VE responded that the previously identified jobs could be performed with a sit/stand option provided that the individual would not be off-task more than ten percent of the workday. (Tr. 86).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. § 416.920(g).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 15, 2012, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease, asthma, emphysema, degenerative disc disease of the lumbar and thoracic spine, disorder of the sacrum, and mild light carpal tunnel syndrome status post remote release (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as

9

>   defined in 20 CFR 416.967(b) except she can occasionally lift and/or carry (including upward pulling) twenty pounds and frequently lift and/or carry (including upward pulling) ten pounds. She can stand and/or walk (with normal breaks) for about six hours and sit (with normal breaks) for about six hours in an eight-hour workday. The claimant's ability to push and/or pull (including operation of hand/foot controls) is unlimited, other than as shown for lifting and/or carrying. She can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. She has no balance limitations. The claimant can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She must avoid unprotected heights and humidity.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on **** and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since November 15, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 50-59).

## V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be

10

based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

In her first assignment of error, Plaintiff essentially argues that the RFC determination is incorrect because it did not account for all her limitations, because the ALJ did not sufficiently discuss or credit her self-reported limitations stemming primarily from pain. (R. 15, PageID# 805-809). In the second assignment of error, Plaintiff again argues that the ALJ erred, because she did not perform a proper credibility analysis as it relates to Plaintiff's self-reports of leg weakness and lumbar pain. *Id*. at PageID# 809-811. Although Plaintiff's brief ostensibly contains two assignments of error, in the Court's view, the two arguments are inseparable, as both revolve around the allegation that the ALJ should have found the Plaintiff more credible and, therefore, included greater limitations in the RFC. Thus, both arguments can be resolved by

11

assessing whether the ALJ's credibility analysis was sufficient.

## 1. Credibility Assessment

Both of Plaintiff's assignments of error assert that the ALJ erred by finding her less than fully credible. (R. 15, PageID# 805-811). Specifically, Plaintiff contends that the record is replete with statements that she has trouble standing or walking for any prolonged period. Plaintiff maintains that her statements and testimony, if credited, would preclude her from performing the standing/walking requirements associated with light work, thereby undermining the RFC finding.[3] (R. 15, PageID# 809-812). Plaintiff maintains that if she is limited to sedentary work, Grid Rule § 201.12 would direct a finding of disability based on her age, education, and lack of past relevant work.

According to Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016), evaluating an individual's alleged symptoms entails a two-step process.[4] First, an ALJ must determine whether a claimant has a "medically determinable impairment" that could reasonably

---

[3] SSR 83-10 states that a "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251 at *6 (Jan. 1, 1983). While SSR 83-10 "does not explicitly preclude light work for an individual who cannot stand or walk for 6 hours of an 8-hour workday," *Sulecki v. Comm'r of Soc. Sec.*, No. 1:13-CV-1597, 2014 WL 2434631 at *14 (N.D. Ohio May 29, 2014) (Armstrong, M.J.), it does explain that "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251 at *6.

[4] SSR 16-3p supercedes SSR 96-7p, 1996 WL 374186 (July 2, 1996), which was in effect at the time of the January 28, 2015 hearing. While there is not unanimity on the issue, the Court applies SSR 16-3p retroactively as it agrees with the rationale of another district court that has addressed the issue. *See Mendenhall v. Colvin*, No. 3:14-CV-3389, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) ("where new rules merely clarify unsettled or confusing areas of the law, retroactive application is proper" and finding that "SSR 96-7p and SSR 16-3p are substantially similar"); *accord Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666 at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."); *contra Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at n. 6 (E.D. Tenn. May 18, 2016) (declining to apply SSR 16-3p retroactively). By its very language, the primary purpose of SSR 16-3p appears to be the elimination of the term "credibility" from policy to clarify that an evaluation of symptoms does not constitute an examination of an individual's character. 2016 WL 1119029 at *1.

produce a claimant's alleged symptoms. *Id*. at *3. The ALJ's decision clearly found the first step was satisfied and states that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 55). Once step one is satisfied, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must "examine the entire case record," including (1) the objective medical evidence; (2) an individual's statements about the intensity, persistence, and limiting effects of symptoms; (3) statements and other information provided by medical sources and other persons; and (4) any other relevant evidence in the individual's case record. SSR 16-3p, 2016 WL 1119029 at *4. When considering a claimant's own statements about the intensity, persistence, and limiting effects of her symptoms, an ALJ should evaluate "whether the statements are consistent with objective medical evidence and the other evidence."[5] *Id*.

However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.")(citations omitted).

---

[5] Factors to be considered in evaluating a claimant's symptoms include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication used to treat the pain or symptoms; (5) treatment other than medication; (6) measures other than treatment used to alleviate pain or symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029 at *7.

Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"). "In evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2016 WL 1119029 at *9. Rather, an ALJ's "decision must contain *specific reasons* for the weight given to the individual's symptoms … and be *clearly articulated so the individual and any subsequent reviewer can assess* how the adjudicator evaluated the individual's symptoms." *Id.* (emphasis added). "While in theory [a court] will not 'disturb' an ALJ's credibility determination without a 'compelling reason,' *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

Here, the ALJ expressly acknowledged she must follow a two-step process to determine whether Plaintiff's symptoms, including pain, were credible. (Tr. 54-55). The ALJ conducted a rather lengthy discussion of Plaintiff's medical treatment since 2012. (Tr. 55-57). Thereafter, the ALJ addressed Plaintiff's alleged limitations as follows:

> With respect to the claimant's alleged limitations, I find such assertions only partially credible. The record did not support the extreme degree of symptoms that she reported. She had only occasional objective pulmonary symptoms, which conflicts with her assertion of persistent substantial difficulty breathing. Moreover, she described having severe depressive symptoms when not on

>medication, but the record contains very little indication of mental health treatment or complaints. The claimant also testified that she had right hand tremors, preventing her from carrying objects with her hand and causing trouble manipulating objects. However, she only recently displayed a mild tremor and mild carpal tunnel syndrome. The record fails to show any persistent difficulty holding or manipulating objects.
>
>Additionally, the claimant testified that she quit smoking three years ago, but the medical evidence indicates that she continued smoking at least some cigarettes until 2014 despite the advice of her physicians. While such inconsistency may not have been purposeful, it is nevertheless relevant in assessing the credibility of her allegations. Further, one would expect a person with the degree of restrictions that the claimant described would maintain faithful compliance with treatment recommendations. Finally, the earnings record shows that she worked only sporadically in the years prior to the alleged onset date. The claimant also noted that she was laid off from her last job, rather than quitting for an impairment-related reason. Such facts raise a question as to whether her medical impairments were the cause of her ongoing unemployment.

(Tr. 57-58).

This a close case. Plaintiff contends that her statements—at the hearing, to medical providers, and as recorded in disability forms—if credited in their entirety, would preclude her from performing the standing/walking requirements associated with light work, thereby undermining the RFC finding. (R. 15, PageID# 809-812). However, Plaintiff's medical records and the statements made in her disability application materials, recounted in the "Evidence" portion of this Report and Recommendation, do not provide an approximation of the amount of time Plaintiff believes she can stand/walk during an eight-hour workday. They do, however, contain repeated complaints of leg pain, back pain, and leg weakness. Plaintiff's hearing testimony is somewhat more specific, though it too lacks precision as to the number of hours she could stand/walk in an eight-hour workday. At the hearing, Plaintiff testified that after fifteen minutes of activity, she needs to rest for ten to 20 minutes. Extrapolated to the length of a workday, Plaintiff's testimony, if credited, is strongly indicative of an inability to stand/walk for

15

more than half the workday, as she appears to require nearly an equal amount of resting time to her time spent in an active mode.[6] (Tr. 77).

The ALJ's credibility discussion, quoted above, focuses exclusively on Plaintiffs pulmonary/breathing symptoms and, to a lesser extent, Plaintiff's right hand tremors. (Tr. 57-58). However, the analysis is devoid of any discussion indicating why the ALJ apparently did not believe that Plaintiff's back/leg pain and/or leg weakness did not preclude standing up to six hours in an eight-hour day. *Id.* The ALJ's discussion of Plaintiff's smoking and Plaintiff's inconsistent statements as to when she quit may be highly relevant to the limiting effects of Plaintiff's breathing problems, but appear to have little if anything to do with her back and leg pain.

"An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (*quoting Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)); *accord Martin v. Colvin*, 2016 WL 6610985 at *3 (N.D. Ohio Sept. 24, 2015) (Lioi, J). A court cannot uphold an ALJs decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (Lioi, J.) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996).

Here, the Court can only speculate as to why Plaintiff's pain allegations were found to be less than fully credible. Plaintiff did not state with any great particularity the extent to which her leg and back pain/leg weakness hinders her ability to walk and stand for prolonged periods. At times, Plaintiff indicates that changing positions and walking actually helps alleviate her pain. (Tr. 671).

---

[6] Plaintiff does state that she needs to rest until her inhaler takes effect, and, as such, her standing/walking limitations do not stem from pain alone. (Tr. 77).

16

While the record may contain ample evidence or inconsistencies in Plaintiff's statements to justify the ALJ's decision to reject any greater limitations stemming from Plaintiff's back and leg pain than those found in the RFC, the case should be remanded for further consideration because the opinion did not directly analyze this issue.   Therefore, it is recommended that this matter be remanded for a new decision that addresses all of Plaintiff's alleged symptoms, that clearly states the extent to which those symptoms limit the Plaintiff, and explains why those symptoms are not credited if they are alleged to exceed the exertional requirements of the RFC.

A new hearing is not required, though that decision is left to the sound discretion of the ALJ, as the error here is one of articulation.   The Court does not find that Plaintiff's pain symptoms must be credited, but rather that the explanation was insufficient.   For this same reason, Plaintiff's request that she be awarded benefits by this Court is rejected.   It is the ALJ's function to determine whether Plaintiff's pain allegations are supported by and consistent with the record.   That determination, however, must be sufficiently clear to allow a subsequent reviewer to trace the path of the ALJ's reasoning.

### IV.   Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for further proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 8, 2017

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).